Thank you, Your Honor. It's good morning. My name is Stephen Babcock. I'm an Assistant Federal Defender for the District of Montana. I represent the appellant in this matter, Derek Tyson Bellamy. I would like to reserve three minutes for rebuttal. Thank you. There's two issues that have come to the court today. One would be the challenge of the sufficiency of the evidence based upon the jury conviction, and the second would be the substantially unreasonable sentence that was imposed by the district court. Obviously, we have a tough hill to climb in this case based upon the law established by the Supreme Court in Jackson, knowing that based upon a conviction on a jury trial, that the evidence must be viewed in the light most favorable to the prosecution. We believe that this is one of those rare circumstances that the Supreme Court stated in Jackson, in which a properly instructed jury could not find guilt beyond a reasonable doubt, even when the evidence is viewed in the most favorable light towards the prosecution. Mr. Bellamy was charged with a felon in possession of a firearm, a 922-G violation. The elements of that charge, obviously, number one being knowingly possession of a firearm. The second two elements, that he was a convicted felon, that the gun traveled to interstate commerce, were stipulated to. So what's missing? He knew it was there? He touched it? He touched it. He knew it was... He pushed it out of sight? He pushed it. He pushed it back. How is that not control? How is that not control? Well, if you take a look at the definition of possession, not only does there have to be knowledge, there also has to be power and intention to... He pushed it. He pushed it out of sight. Yeah. How is that not control? That's power over it. He could have grabbed it if he wanted to. Yeah. He decided to push it out of sight. If he would have grabbed it, obviously, I think that there would be a better argument that the conviction should stand. In this case... ...it's insufficient the way it is. He pushed it out of sight. How is that not controlling the location of the gun? Well, he controlled the location of the gun by pushing it back, but there also has to be an intention in this particular case. He got into a vehicle that... He didn't push it by accident. No, he did not. He pushed it deliberately. And that's exactly what he admitted to the law enforcement officer. But don't we have more here? We have him occupying the passenger seat where the gun is visible between the console and the seat at the time the police officer stopped. As Judge Clifton says, he pushes it down. Underneath the seat in which he's sitting is a holster and a magazine, and apparently also underneath the seat is a pill bottle with his name on it. That, the pill bottle with his name on it, obviously is not something that came out during the chariot ride. It didn't come up during the... But it was admitted. It was admitted... A picture of that was admitted into evidence at trial. The picture of the identifying bottle, that was also found in the back seat of the vehicle. I understand. I understand. So, but... It seems to me unlikely that sitting in the passenger seat, he tossed it over into the back seat. So the reasonable inference is that he placed it under the front seat and it rolled back. Given all those things, why isn't that... It's not the strongest case the government ever had, but why isn't that enough to give rise to a reasonable inference of possession? Well, I think we take a look at the Kearns case that I already talked about in our brief. In Kearns, you had a co-conspirator that essentially lined up the situation with law enforcement on a sting operation to buy marijuana. That individual met with a law enforcement officer, opened up a trunk, pulled out a bag of weed, smelled it, put back in the bag of weed, and then went to his own car and showed the law enforcement officer the money that he was going to buy the marijuana with. This court said that that did not sufficiently meet the definition of possession. And I would argue, in this case, there's even less possession than there was in Kearns. We don't even need to get to that, do we? If you look at the Gutierrez case, in this situation, this is an attempt to conceal a weapon. That's all that was necessary, was it? Well, in the Gutierrez case, I think there's major differences. In that case, law enforcement stated that when they approached the vehicle, all passengers were making furtive movements. Well, your client saw them coming, pushed the gun back under the seat. What's the difference? Well, I guess I would respectfully disagree that the evidence in this case said that he pushed the gun back when law enforcement approached. Sergeant Finnegan testified. He was the first on the scene. He never said anything about Mr. Bellamy making any furtive movements. And also, in the Gutierrez case, there was four firearms located next to each one of the passengers. So I think there is major differences between that case and what we have here. Wait, wait, wait. Your client at ER 7778 said, in quotes, he had pushed the gun back when he was exiting the vehicle. Correct. So he admits that. Correct. So can't the jury draw the reasonable inference that he was trying to hide that from law enforcement? Well, I guess hiding, if he was trying to conceal that, doesn't necessarily mean he had the intention to control it. He wasn't doing it to keep it out of the rain, was he? Excuse me? He wasn't pushing it under the seat so he could keep it out of the rain. He was trying to hide the gun. Well, if you watch the video surveillance that was submitted to the jury on this case, that is, I guess, an inference that could be brought up. And the jury can draw that, can it not? Certainly, the jury can. But even if he was pushing the gun back, that does not necessarily mean that he had the intention to control it. Let's take this case slightly differently, and I'm looking at the Soto case. Let's assume that he hadn't made this admission to the police, but they searched the car afterwards and found a gun with his fingerprints on it. Would that be enough to establish possession for purposes of the statute? In my honest opinion, and obviously I'm a defense attorney, I would say no. I know. I hope you say that. But Soto at least suggests the contrary. Soto says if you find a weapon with the fingerprints on it of the person who's not allowed to possess it, that's sufficient to establish possession. You could explain it away to the jury. You could try to make them come, and a really good defense attorney like you could probably convince them that he didn't possess it. He says, you're going to find my fingerprints on this gun, or my DNA. If he had not said anything, and they just discovered it with his fingerprints on it, I think that would be enough to establish possession, wouldn't it? It possibly could. I mean, if you talk about the Teamer case that came out, and they discussed all sorts of scenarios, and of course the way the model pattern jury instruction defines possession, there's a leeway there. And of course this goes to the trier of fact in determining what in fact would be possession. But if you take a look at the cases that we have here, all we have is his statement to the law enforcement officer that he saw the gun, that he pushed it back. We know he wasn't the owner of the gun, and we know that that isn't. But we have a little bit more. He does tell law enforcement, as I recall, that he got in the passenger side of the car and was in it all the time until it came to the parking lot. Does he not? Yes, he does. So there's a gun. By his story, inferring again, there has to be a gun next to him all the time he's coming there. Correct. And then when he gets there, and he's exiting the car because the police are there, he pushes it down. That's what he says, right? His statement was that he exited the car. He exited the car twice, and he exited the car far before law enforcement showed up, which is supported by the video surveillance. In that time, he could have pushed the gun back, or he could have pushed the gun back when law enforcement showed up. But law enforcement never said when they walked up to the door. And granted, the windows were tinted, but his window was down and they looked right in. But let me assume that you're right, and I think the record could go either way on this, but let's assume you're right, that he hit it not in response to law enforcement showing up, but just because he was a hiding kind of guy. Doesn't that show possession? Well, no. It still doesn't show that he had the intention to control it. And when the law enforcement officer was expecting it to move by himself, I mean, he was pushing it. How is that not intending to do something that controls it? That doesn't necessarily qualify. If you get into it, that doesn't require possession as an intent to shoot somebody. No. So he's controlling it. As it happens, he's controlling it in a way that doesn't threaten to shoot somebody, but that's still controlling the object. If you get into an individual's vehicle and they have something sitting on the seat, and you take that and you move it, you're moving it not necessarily because you're going to control it. If that's a gun, I suspect a felon's got a real problem.  If he picks it up and puts it down someplace else, how is that not possession under the law? Well, the possession underneath the law obviously has to be knowledge, power, and intention control. We would once again argue that the knowledge in this case is based upon accident, ignorance, or mistake, which is the legal definition of knowledge. Wait a minute. I thought he admitted he saw the gun right from the beginning. He knew the gun was there. Correct. He had knowledge. Correct. But knowledge cannot be brought about by accident, mistake, or ignorance. It doesn't matter. He saw the gun, and he knew it was there, and when he left the vehicle, he pushed it back. Right. I mean, again, Jackson's our case here, as you started out with, and the jury can infer all the things that are necessary to complete this loop, can't they? And I think they could infer that, but when you take a look... You're saying you wouldn't like them to, but if they did, that's enough, right? No, and we're arguing that it is not in this particular case because we're arguing that there is no definition of knowledge that is met, and this is not exactly a thorough investigation. I mean, neither one of the individuals that were in the car were interviewed. We don't know who is the actual owner of the firearm, which was denied by Mr. Bellamy. We certainly didn't hear testimony from anybody that was associated with him that night besides law enforcement. So, Your Honors, I guess I'm a little bit over here. You've kind of exhausted your time. We'll still give you a minute for rebuttal. I greatly appreciate it. Thank you. And we'll hear from the government. Good morning, Your Honors. My name is Michael Lahr. I'm an assistant U.S. attorney out of the Helena, Montana, office, the U.S. Attorney's Office for the District of Montana. As the Court has seen, the facts are not disputed in this case, and as the Court has also commented on, the facts are not particularly complicated in this case. What we have are essentially the defendant's admissions that when he got in the car, he saw the gun, he knew it was there, he drove around with this individual, knowing the gun was right off his left hip the entire time between the console and the seat, and then when he exited the car, he pushed it back. Sir, is it the mere touching of the gun sufficient to establish control? I think the question would be whether it was actually a mere touching. Well, no, but I'm asking a different question. I'm asking is the mere touching of the gun sufficient to establish control? Is it kryptonite? I think if it were established that it was, as the defendant attempts to show, that the inference should be that it was purely accidental. Obviously, in this case, you have a push. I'm trying to figure out what's enough evidence to go to the jury, not what the jury can infer. Let's assume that he just says, and the facts are slightly different, I got in the car, I saw a gun there, I touched it, and then I got out of the car later. You'll find my fingerprints on it. Is that enough to go to the jury on possession? I think it would be to survive a Rule 29, go to the jury, because I think, again, not knowing all of the circumstances of the hypothetical. But those are all the circumstances. That's the hypothetical. That's why I gave you it. That's the hypothetical. I think that if you, as you say, if there were the fingerprints on the gun, certainly I think it's sufficient. What do you do with the marijuana case, then, that we have, where the court says it's not sufficient, that he merely touched the package? Well, I think in that case, you have the issue was control, just as it is in the possession here, whether or not you exercise physical control over it or you have the intent to exercise control over it. I think that's the difference between the Kearns case and this case. So, again, this is my hypothetical. If he picked up the gun and said, oh, my God, it's a gun, and handed it to the driver of the car, would there be enough to go to the jury? I think there's enough to go to the jury. They would have the opportunity to decide whether or not they believed him. I'm just having some trouble reconciling that, which seems like a common-sense approach, with the marijuana case, where the defendant has the package in his hand. He intends to buy it, I think. And we say, well, there's not enough for possession because he gives it right back. Why doesn't that case control here? I think it's because of the distinguishing factors of it, is that in Kearns, he was in one vehicle. He literally was, and again, this is defending how the court ruled on this, they opened up the trunk. He did not know what was in the trunk until he got there. He had not been in the same vehicle. He was shown what was in the trunk, and he did not move the 50-pound bag. All he did was take a piece of marijuana out, smell it, and put it back. Isn't this case really more like Soto? Because there you have a fingerprint. Clearly here you have fingerprints. The court found that that was sufficient to establish possession. I think it is much more like Soto or even Gutierrez. I think it's sort of Gutierrez plus, even in this case. There was some question in that case if the inference was correct, that he was the one who actually hit the gun under the seat. Here you have his own admission stating that he pushed the gun back. So I think we really have Gutierrez plus. Certainly enough, if you combine Soto, Gutierrez, and the fact that the jury is entitled to consider circumstantial evidence, that's more than enough to sustain the conviction on this point, is it not? I agree completely, Your Honor, and think that essentially the defendant in this case is sort of putting Jackson, turning it on its head a little bit. Reasonable inferences can be made by the jury. Certainly I think they did in this case. I think what the defendant is essentially arguing is that we should find exculpatory inferences and latch on to those. And if we can find those, then there is insufficient evidence. But I think, again, that turns Jackson on its head. I think there is ample evidence in this case to establish the possession. So, again, tell me, I'm still having difficulty with Kearns. He actually touches the marijuana in Kearns, takes it out. Maybe Kearns is wrong, but it's one of our decisions. He takes it out of the package, puts it in his hand. I don't know what people do to test the quality of it. And he's charged with possession of marijuana. And the Court says he didn't possess it. Maybe he didn't possess all 50 pounds of it. That I can get to. But how do we conclude that he didn't possess it even though he touched it and in your case conclude that there was possession even though he touched it? Now, I know there are exculpatory facts in Kearns, but I think the Court says in Kearns there's not enough evidence to convict, not enough evidence to get past the Rule 29 motion. Is Kearns just an outlier? Well, I think, obviously, this Court concluded that Kearns was not responsible. None of us, I think, but this Court. So it does, obviously, in this case, we would, I think perhaps you would suggest that it is a bit of an outlier, although I can see the rationale. And I think in this case I can, as we attempted to do in the brief, I think we can readily distinguish the difference between an observation, a picking up of a small amount of marijuana in the total and putting it back. Obviously, there is a touch there. I think the difference here is we have a push. We have an exercise of physical control over the weapon with a push. So in your view, it's not just the fact that he touched the weapon, but that he exercised enough control over it to put it down between the seat and the console? I think it simply enhances it even more. I think essentially we're in the realm of actual possession here. He exercised physical control over it by pushing it down. He doesn't say, well, I may have touched it or I inadvertently touched it. There's a suggestion that there should be some kind of an exculpatory inference that it was purely an accident, but we can't get around his simple statement is when I got out of the vehicle, I pushed the gun back. Your opponent didn't have a chance to, but I suspect he wants to when he gets back up. Could you talk about the sentencing issues? Yes, Your Honor. I think in this case I think there was clearly no abuse of discretion with how the court sentenced him. There is an argument that was made that either both on criminal history points as well as the base offense level that somehow almost this was an overstatement or a misrepresentation of his actual criminal background. He simply got the three points for the prior conviction. He got the two points for having committed the crime while on probation. The fact that it was under a state court probation, I think some hay is sought to be made by the defendant that he wasn't being actively supervised. It doesn't change the fact that the five points he got for criminal history points were completely what he should have gotten. There's no mystery about those. As far as the 22 base offense level, again, that's where he should be, and I don't think that there's any strong argument that the court was in any way correct  I think the way the court addressed all of these issues was very pointed and I think covered the 3553 factors, but informed the defendant at the time of sentencing, this is a gun charge, you possess this, you control substances, and guns do not mix. You had this gun that was not only capable of accepting a high-capacity magazine. In fact, this Glock that he had did have a 17-round magazine plugged into it at the time. I think the court looked at the totality of the circumstances and came to a reasonable conclusion. It was a guideline sentence, and I don't think that there was anything, any strong argument can be made that somehow his criminal history is overvalued or overrepresented either by the criminal history points or the base offense level. And so that would basically cover the government's argument as far as the sentencing is concerned, and if there are no further questions, the United States will. Thank you for the argument. We'll hear rebuttal. I guess when taking a look at the Kearns case, which is also interesting, is that the co-conspirator specifically went there to buy marijuana, touched the marijuana, went to show the law enforcement officer that he was going to buy the marijuana, and that was held as insufficient possession, overturning a jury verdict. In this case, from what we know, he didn't bathe the government in all the favorable light they deserve based upon case law. We have the individual getting into a car, a car that he does not own, seeing a gun that he does not own, pushing that gun back. We don't know that he doesn't own it. All we know is that the government didn't prove that he owned it. Well, I guess when taking a look at any inference you could take, there was no testimony whatsoever presented to the jury that he owned the firearm. Obviously, they could have investigated that by tracing the gun. That wasn't done either. If I take a look at the sentencing factors in this case, if I may briefly, he received five criminal history points, you might as well say, based upon this underlying conviction that prevented him from having a firearm. This is for the sale of a quarter ounce of weed and an eighth ounce of weed, less than $200. Five of his six criminal history points were based upon that. He also received an eight-level enhancement, because this is a controlled substance offense, based upon two small undercover operations on the sale of weed. We argued to the court that his criminal history score was grossly exaggerated and also was his base offense level, and we still argue today that the sentence imposed was not reasonable. The district court also stated that there was ample evidence to convict Mr. Bellamy at the sentencing hearing. I think that that is not supportive of the way the district court talked about the Rule 29 at halftime of the trial, saying it was very circumstantial and it was very close. I thank you for your time. Thank you. We thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Clifton, Smith, Hurwitz